Scott Goldshaw, Esq.
Danielle Goebel, Esq.
SALMANSON GOLDSHAW, PC
Two Penn Center
1500 John F. Kennedy Blvd., Suite 1230
Philadelphia, PA 19102
215-640-0593

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOUIS NATALE, DANIEL RUVIN, MICHAEL DALLAS, BETTY BARNES, ALFRED DITULLIO, HARVEY SKLAR, ALBERT JOHN ELLOR, FRANK HIGGINS, ANTHONY MARINO, STEPHEN PERRY, LINDA BURGER, and ANTHONY ROMANO, <br>　　　　　　　Plaintiffs, <br> v. <br> MISSION SOLUTIONS LLC d/b/a/ MISSION SOLUTIONS ENGINEERING, <br>　　　　　　　Defendant. | CIVIL ACTION NO. 13-_____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Betty Barnes (49 Knighton Lane, Mount Laurel, New Jersey), Linda Burger (616 Newton Avenue, Oaklyn, New Jersey), Michael Dallas (421 Foxcroft Drive, Ivyland, Pennsylvania); Alfred DiTullio (2018 Tomlinson Road, Philadelphia, Pennsylvania), Albert John Ellor (50 Foxhill Drive, Southampton, New Jersey), Frank Higgins (104 College Avenue, Flourtown, Pennsylvania), Anthony Marino (57 Warden Road, Doylestown, Pennsylvania), Louis Natale (553 Zinn Drive, Southhampton, Pennsylvania), Stephen Perry (37 Radcliff Drive, Doylestown, Pennsylvania), Anthony Romano (14 Gloucester Court, Marlton, New Jersey), Daniel Ruvin (167 N. Latch's

Lane, Bala Cynwyd, Pennsylvania), and Harvey Sklar (10 Lippincott Avenue, Riverton, New Jersey), as and for their complaint against Defendant Mission Solutions LLC (121 Whittendale Drive, Moorestown, New Jersey), aver as follows:

## NATURE OF ACTION

1. Plaintiffs hereby complain that Defendant Mission Solutions LLC ("MSE") unlawfully terminated their employment because of age as part of a reduction in force that targeted older workers, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1, *et seq*.

## JURY DEMAND

2. Plaintiffs hereby demand a trial by jury as to all issues of fact in this action.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Betty Barnes is an individual residing at 49 Knighton Lane, Mount Laurel, New Jersey.

4. Plaintiff Linda Burger is an individual residing at 616 Newton Avenue, Oaklyn, New Jersey.

5. Plaintiff Michael Dallas is an individual residing at 421 Foxcroft Drive, Ivyland, Pennsylvania.

6. Plaintiff Alfred DiTullio is an individual residing at 2018 Tomlinson Road, Philadelphia, Pennsylvania.

7. Plaintiff Albert John Ellor is an individual residing at 50 Foxhill Drive, Southampton, New Jersey.

8. Plaintiff Frank Higgins is an individual residing at 104 College Avenue, Flourtown, Pennsylvania.

9. Plaintiff Anthony Marino is an individual residing at 57 Warden Road, Doylestown, Pennsylvania.

10. Plaintiff Louis Natale is an individual residing at 553 Zinn Drive, Southhampton, Pennsylvania.

11. Plaintiff Stephen Perry is an individual residing at 37 Radcliff Drive, Doylestown, Pennsylvania.

12. Plaintiff Anthony Romano is an individual residing at 14 Gloucester Court, Marlton, New Jersey.

13. Plaintiff Daniel Ruvin is an individual residing at 167 N. Latch's Lane, Bala Cynwyd, Pennsylvania.

14. Plaintiff Harvey Sklar is an individual residing at 10 Lippincott Avenue, Riverton, New Jersey.

15. Defendant MSE is a foreign limited liability corporation under the laws of New Jersey and is engaged in an industry affecting interstate commerce. MSE maintains its headquarters at 121 Whittendale Drive, Moorestown, New Jersey.

16. The facilities where Plaintiffs were employed are located in Moorestown, New Jersey.

17. This Court has subject matter jurisdiction over Plaintiffs' ADEA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' LAD claims pursuant to 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over MSE because it maintains offices within this District and MSE's actions giving rise to this lawsuit took place within this District.

19. Venue is appropriate in this District because the events giving rise to this action took place in this District and Defendant is located in the District.

20. Each Plaintiff timely filed a Charge of Discrimination against MSE with the Equal Employment Opportunity Commission as to the federal claims asserted herein.

## FACTS GIVING RISE TO CLAIMS

*Facts Pertaining Generally to All Plaintiffs*

21. In December 2011, MSE announced to its employees that it planned to implement workforce reductions because of decreased governmental funding.

22. On January 6, 2012, MSE notified Plaintiffs they were being terminated as part of a reduction in force.

23. MSE did not provide any specific explanation to Plaintiffs as to why they in particular were selected for termination.

24. Upon information and belief, MSE had approximately 500 employees at the time the Plaintiffs were notified of their termination.

25. Upon information and belief, at or about the time Plaintiffs were notified of their termination, MSE selected a total of 68 people for termination as part of the reduction in force.

26. Upon information and belief, MSE targeted older employees for termination as part of the reduction in force.

27. Upon information and belief, MSE's selection of Plaintiffs for termination was part of a broader plan by MSE to reduce the age of its workforce.

*Facts Pertaining Specifically to Plaintiff Barnes*

28. Ms. Barnes was employed by MSE and/or its predecessor for more than 13 years.

29. Throughout her 13 years with MSE, Ms. Barnes had satisfactory job performance.

30. At the time of her termination, Ms. Barnes was a configuration management specialist in the QMO Department.

31. Ms. Barnes was qualified for the position she held at the time her employment was terminated.

32. At the time of her termination, Ms. Barnes monitored design and code inspections, kept track of weekly and monthly metrics, and assigned members of her group to do audits.

33. Upon information and belief, one or more younger employees who also monitored design and code inspections and kept track of metrics were retained.

34. Upon information and belief, at the time of Ms. Barnes' termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than she was.

35. Ms. Barnes was 64 years old on the date of her termination.

*Facts Pertaining Specifically to Plaintiff Burger*

36. Ms. Burger was employed by MSE and/or its predecessor for more than 20 years.

5

37. Throughout her 20 years with MSE, Ms. Burger had satisfactory job performance.

38. At the time of her termination, Ms. Burger was a Software Engineer, Senior Professional in the Display Department.

39. Ms. Burger was qualified for the position she held at the time her employment was terminated.

40. At the time of her termination, Ms. Burger was responsible for engineering software, which required her to write code, attend meetings, and interact with clients.

41. Upon information and belief, one or more younger employees who also engineered software were retained.

42. Upon information and belief, at the time of Ms. Burger's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than she was.

43. Ms. Burger was 56 years old on the date of her termination.

*Facts Pertaining Specifically to Plaintiff Dallas*

44. Mr. Dallas was employed by MSE and/or its predecessor for more than 15 years.

45. Throughout his 15 years with MSE, Mr. Dallas had satisfactory job performance.

46. At the time of his termination, Mr. Dallas was a Senior Quality Engineer in the QMO Department.

47. Mr. Dallas was qualified for the position he held at the time his employment was terminated.

48. At the time of his termination, Mr. Dallas attended code and design inspections and provided feedback as to the findings of those inspections.

49. Upon information and belief, one or more younger employees who also attended code and design inspections and provided feedback as to findings were retained.

50. Upon information and belief, at the time of Mr. Dallas' termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

51. Mr. Dallas was 52 years old on the date of his termination.

*Facts Pertaining Specifically to Plaintiff DiTullio*

52. Mr. DiTullio was employed by MSE and/or its predecessor for more than 4 years.

53. Throughout his four years with MSE, Mr. DiTullio had satisfactory job performance.

54. At the time of his termination, Mr. DiTullio was a Software Engineer, Senior Principal in the Mission Assurance Department.

55. Mr. DiTullio was qualified for the position he held at the time his employment was terminated.

56. At the time of his termination, Mr. DiTullio engineered software.

57. Upon information and belief, one or more younger employees who also engineered software were retained.

58. Upon information and belief, at the time of Mr. DiTullio's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

59. Mr. DiTullio was 53 years old on the date of his termination.

*Facts Pertaining Specifically to Plaintiff Ellor*

60. Mr. Ellor was employed by MSE and/or its predecessor for more than 19 years.

61. For approximately 12 years, Mr. Ellor held a management position at MSE, where he was charged with overseeing the development, testing, and delivery of software for successive projects, using the Earned Value Measurement System to ensure the result was achieved on time, to budget, and to specifications. He was also charged with overseeing a subgroup which put together program packages for the WCS department.

62. Throughout his nineteen years with MSE, Mr. Ellor had satisfactory work performance.

63. In June 2011, Mr. Ellor was involuntarily transferred into a non-management position in a new department where his extensive management skills and experience with the Earned Value Measurement System were not utilized.

64. The transfer was not disciplinary in nature.

65. Upon information and belief, a younger individual with significantly less experience in military defense and management and significantly less years with MSE than Mr. Ellor was retained as a manager of a subgroup.

66. At the time of his termination, Mr. Ellor was an Engineering Manager in the Process Engineering Department.

67. Mr. Ellor was qualified for the position he held at the time his employment was terminated.

68. Upon information and belief, at the time of Mr. Ellor's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

69. Mr. Ellor was 68 years old on the date of his termination.

*Facts Pertaining Specifically to Plaintiff Higgins*

70. Mr. Higgins was employed by MSE and/or its predecessor for more than 30 years.

71. Throughout his thirty years with MSE, Mr. Higgins had satisfactory work performance.

72. At the time of his termination, Mr. Higgins was a Software Engineer Principal Leader in the Weapons Department.

73. Mr. Higgins was qualified for the position he held at the time his employment was terminated.

74. At the time of his termination, Mr. Higgins supported, generated, and maintained the systems.

75. Upon information and belief, one or more younger employees who also supported, generated, and maintained the systems were retained.

76. Upon information and belief, at the time of Mr. Higgins' termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

77. Beginning in 2011, Mr. Higgins was frequently encouraged by his manager to consider retirement and badgered about his decision not to retire.

78. Mr. Higgins was 68 years old on the date of his termination.

*Facts Pertaining Specifically to Plaintiff Marino*

79. Mr. Marino was employed by MSE and/or its predecessor for more than 16 years.

80. Throughout his 16 years with MSE, Mr. Marino had satisfactory work performance.

81. In April 2011, Mr. Marino was involuntarily transferred from the Weapons Control Systems Department, where he had worked for over ten years. Mr. Marino was told the reason for the transfer was that it would be a "better fit."

82. At the time of his termination, Mr. Marino was a Senior Software Engineer in the Mission Assurance Department.

83. Mr. Marino was qualified for the position he held at the time his employment was terminated.

84. At the time of his termination, Mr. Marino ran tests on software and suggested improvements for the system.

85. Upon information and belief, one or more younger employees who also ran tests on software and suggested improvements were retained.

86. Upon information and belief, at the time of Mr. Marino's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

87. Mr. Marino was 78 years old on the date of his termination.

*Facts Pertaining Specifically to Plaintiff Natale*

88. Mr. Natale was employed by MSE and/or its predecessor for more than 26 years.

89. Throughout his 26 years with MSE, Mr. Natale had satisfactory work performance.

90. At the time of his termination, Mr. Natale was a Senior Computer Scientist in the Mission Assurance Department.

91. Mr. Natale was qualified for the position he held at the time his employment was terminated.

92. At the time of his termination, Mr. Natale was a tester for the AEGIS system.

93. Upon information and belief, one or more younger employees who also tested the systems were retained.

94. Upon information and belief, at the time of Mr. Natale's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

95. Mr. Natale was 63 years old on the date of his termination.

*Facts Pertaining Specifically to Plaintiff Perry*

96. Mr. Perry was employed by MSE and/or its predecessor for one year.

97. Throughout his year at MSE, Mr. Perry had satisfactory work performance.

98. At the time of his termination, Mr. Perry was a Principal Software Engineer Leader in the Mission Assurance Department.  Mr. Perry was promoted to this position in March 2011, after just a few months with the company.

99. Mr. Perry was qualified for the position he held at the time his employment was terminated.

100. At the time of his termination, Mr. Perry was the manager of the AEGIS modernization group.

101. Upon information and belief, one or more younger employees who also managed a subgroup were retained.

102. Upon information and belief, at the time of Mr. Perry's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

103. Upon information and belief, the job duties that Mr. Perry had performed were substantially assumed by an individual that is significantly younger than Mr. Perry.

104. Mr. Perry was 46 years old at the time of his termination.

*Facts Pertaining Specifically to Plaintiff Romano*

105. Mr. Romano was employed by MSE and/or its predecessor for over 22 years.

106. Throughout his 22 years with MSE, Mr. Romano had satisfactory work performance.

107. At the time of his termination, Mr. Romano was a Senior Computer Scientist in the Command and Control Department.

108. Mr. Romano was qualified for the position he held at the time his employment was terminated.

109. At the time of his termination, Mr. Romano conducted software maintenance and software development.

110. Upon information and belief, one or more younger employees who also conducted software maintenance and developed software were retained.

111. Upon information and belief, at the time of Mr. Romano's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

112. Mr. Romano was 52 years old at the time of his termination.

*Facts Pertaining Specifically to Plaintiff Ruvin*

113. Mr. Ruvin was employed by MSE and/or its predecessor for over 27 years.

114. Throughout his 27 years at MSE, Mr. Ruvin had satisfactory work performance.

115. At the time of his termination, Mr. Ruvin was an Integration Leader in the Mission Assurance Department.

116. Mr. Ruvin was qualified for the position he held at the time his employment was terminated.

117. At the time of his termination, Mr. Ruvin coordinated the testers in his group to ensure that all interfaces were properly tested.

118. Upon information and belief, one or more younger employees who also coordinated a group of testers were retained.

119. Upon information and belief, at the time of Mr. Ruvin's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

120. Mr. Ruvin was 65 years old at the time of his termination.

*Facts Pertaining Specifically to Plaintiff Sklar*

121. Mr. Sklar was employed by MSE and/or its predecessor for over 30 years.

122. Throughout his thirty years at MSE, Mr. Sklar had satisfactory work performance.

123. At the time of his termination, Mr. Sklar was a Senior Computer Scientist in the Weapons Department.

124. Mr. Sklar was qualified for the position he held at the time his employment was terminated.

125. At the time of his termination, Mr. Sklar tested and supported the AEGIS system, which required integration and frequent customer interaction.

126. Upon information and belief, one or more younger employees who also tested and supported the systems were retained.

127. Upon information and belief, at the time of Mr. Sklar's termination, MSE retained one or more similarly situated employees who were younger and less qualified or experienced than he was.

128. Mr. Sklar was 74 years old at the time of his termination.

### COUNT I – ADEA (All Plaintiffs)

129. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as though set forth fully herein.

130. MSE's termination of Plaintiffs' employment violated the ADEA's prohibition against employment discrimination based on age.

131. MSE took its actions against Plaintiffs in willful violation of their right to be free from age discrimination in their employment under the ADEA.

WHEREFORE, each Plaintiff demands:

(1) back pay for the period commencing with the date of termination and continuing through the date of judgment;

(2) reinstatement or, in the alternative, front pay for an appropriate period;

(3) liquidated damages in an amount equal to back pay;

(4) an enjoinment of future discriminatory practices by MSE in violation of the ADEA;

(5) reasonable attorneys' fees in accordance with the ADEA;

(6) reimbursement of costs incurred in this action; and

(7) any and all other relief that this Court finds to be appropriate and just.

## COUNT II - LAD AGE DISCRIMINATION (All Plaintiffs)

132. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as though set forth fully herein.

133. MSE's termination of Plaintiffs' employment violated the LAD's prohibition against employment discrimination based on age.

134. MSE's violations of the LAD were intentional and warrant the imposition of punitive damages.

WHEREFORE, each Plaintiff demands:

(1) back pay for the period commencing with the date of termination and continuing through the date of judgment;

(2) reinstatement or, in the alternative, front pay for an appropriate period;

(3) compensatory damages (including but not limited to damages for emotional pain and suffering);

(4) punitive damages;

(5) an enjoinment of future discriminatory practices by MSE in violation of the LAD;

(6) reasonable attorneys' fees in accordance with the LAD;

(7) reimbursement of costs incurred in this action; and

(8) any and all other relief that this Court finds to be appropriate and just.

*Scott B. Goldshaw*

———————————————
Scott B. Goldshaw, Esq.
goldshaw@salmangold.com
Danielle Goebel, Esq.
danielle@salmangold.com
SALMANSON GOLDSHAW, P.C.
Two Penn Center, Suite 1230
1500 J.F.K. Blvd.
Philadelphia, PA 19102
215-640-0593
215-640-0596 (fax)
*Attorneys for Plaintiffs*

Dated: August 13, 2013